IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TEAMSTERS LOCAL UNION NO. 727 HEALTH AND WELFARE FUND, TEAMSTERS LOCAL UNION NO. 727 PENSION FUND and TEAMSTERS LOCAL UNION NO. 727 LEGAL AND EDUCATIONAL ASSISTANCE FUND, <br><br> *Plaintiffs,* <br><br> v. <br><br> PAS, LLC, <br><br> *Defendant.* | Case No. 1:14-CV-6747 <br><br> Judge Dow, Jr. <br><br> Magistrate Judge Gilbert |

## PLAINTIFFS' MOTION TO ENTER JUDGMENT

The Plaintiffs Teamsters Local Union No. 727 Health and Welfare Fund ("Welfare Fund") and Teamsters Local Union No. 727 Legal and Educational Assistance Fund ("L&E Fund") (collectively "Plaintiffs" or "the Funds"), by and through their undersigned counsel, hereby move this Court to enter judgment in this matter in the amount of $120,291.00 plus interest and liquidated damages. In support thereof, Plaintiffs state:

### PROCEDURAL HISTORY

1. On September 2, 2014, the Plaintiffs filed a Complaint seeking an Order from the Court directing the Defendant PAS, LLC ("PAS" or "Defendant") to cooperate in a payroll audit for the purpose of determining what, if any, contributions PAS may owe the Funds on behalf of employees covered by the Collective Bargaining Agreement ("CBA") between the Teamsters Local Union No. 727 ("Union") and the Defendant. *See Dkt. No.1*

2. On October 14, 2014, the Court entered default judgment against the Defendant and directed

the Defendant to produce records necessary for the Plaintiffs to conduct a payroll audit to determine, what, if any, contributions may be owed to the Plaintiffs. *See Dkt. No. 9.*

3. Since the date of the Court's October 14, 2014 Order, Plaintiffs' auditors have attempted to obtain records from the Defendant in order to conduct a payroll audit.

4. By this Motion, Plaintiffs request the Court to enter judgment in their favor and against Defendant directing Defendant to pay contributions, interest, liquidated damages and attorneys' fees and costs to the Plaintiffs as provided under Section 502 of the Employee Retirement Income Security Act, as amended, 29 U.S.C. § 1132(g).

## FACTUAL BACKGROUND

5. Plaintiffs are jointly administered multi-employer employee benefit funds as defined under section 302(c)(5) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(c)(5); and sections 3(1), 3(2)(A), and 3(37) (A) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1002(1)(A), 1002(2)(A), and 1002(37) (A).

6. The Funds are administered by a Board of Trustees ("Trustees") in accordance with section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5), and exist for the exclusive purpose of providing welfare, retirement and legal and education assistance benefits to their respective participants and their beneficiaries and defraying the reasonable expenses of administering the plans, in accordance with section 404 of ERISA, 29 U.S.C. §1104.

7. As provided in the respective Funds' Restated Agreement and Declaration of Trust ("Trust Agreements"), Plaintiffs are required to receive, hold and manage all monies required to be contributed to the Funds by Employers in accordance with the provisions of the then applicable Collective Bargaining Agreements ("CBAs") between the Employer and the Teamsters Local 727 ("Union"). The monies are to be used for the purposes set forth in the Trust Agreements.

Attached hereto as **Exhibit A and B** are true and correct copies respectively of the Health and Welfare Fund Trust Agreement and Legal and Educational Assistance Fund Trust Agreement[1].

8. On July 1, 2013, Defendant executed a July 1, 2013 to June 20, 2018 CBA ("PAS CBA") with the Union and by its signature, Defendant agreed to be bound by the terms of therein, including terms governing contributions to the Plaintiff Funds. Attached hereto as **Exhibit C** are true and correct copies of the PAS CBA.

9. Thereafter, on December 19, 2013, Defendant executed the November 1, 2011 to October 3, 2016 master Parking Industry CBA ("Parking Industry CBA") with the Union and by its signature, Defendant agreed to be bound by the terms therein, including terms governing contributions to the Plaintiff Funds. Attached hereto as **Exhibit D** is a true and correct copy of the Parking Industry CBA.

10. At no point in time did the Defendant send written notification to the Plaintiffs to cancel the agreement between the parties.

11. Articles 19 and 20 of the PAS CBA and Article 20 of the Parking Industry CBA govern contributions to the Funds. Pursuant to the CBAs, the Defendant was required to make monthly contributions to the Health and Welfare and Legal and Educational Assistance Funds per terms set forth therein. *See Ex. C and Ex. D.*

12. Despite due demand, Defendant failed to comply with the Funds' request for an accounting to complete a payroll audit to determine contributions owed. Plaintiffs subsequently filed this suit seeking an order compelling Defendant to submit to the accounting request. *See Plaintiffs' Compl., Dkt. No. 1*

13. The Court's October 14, 2014 default judgment order required Defendant to produce its

---

[1] As explained below, the auditors determined that no contributions were owed to the Pension Fund therefore, Plaintiffs' are not entering the Pension Fund's Trust Agreement as an exhibit.

books and records for the period December 1, 2013 through August 31, 2014 by November 4, 2014. In addition, the Court ordered Defendant to pay any amounts found due and owing following the accounting, and to generally comply and perform in accordance with the terms of its agreement with the Union. *See Dkt. No. 9, ¶¶3-4.*

14. The Court also reserved jurisdiction to enforce supplemental proceedings to enforce the judgment. *See Dkt. No. 9, ¶ 5.*

15. Prior counsel for Plaintiffs mailed a copy of this order to Defendant on October 15, 2014. *See Dkt. No. 29-4.*

16. Defendant failed to comply with the Court's Order.

17. On August 24, 2015, Plaintiff's counsel filed its motion for rule to show and to hold Defendant in civil contempt. *See Dkt. No. 29*

18. After an October 6, 2015 hearing on Plaintiffs' motion for rule to show and to hold Defendant in civil contempt, the Court entered rule to show cause against PAS and Cesar Galvan ("Galvan"), the President of PAS, personally. *See Dkt. No. 33, 34, and 35.*

19. On October 30, 2015, after serving the rule to show cause orders upon PAS and Galvan, attorney Doug Wexler ("Wexler") appeared in court without filing an appearance with the Court and the Court granted the parties thirty days to meet and confer to resolve the contempt issues and to allow Defendant to tender accounting documents. *See Dkt. No. 36.*

20. On November 30, 2015, a few days before the next court hearing, Wexler emailed Plaintiffs' counsel some tax documents, bank statements, and Illinois Secretary of State corporate search print out for PAS.

21. On November 30, 2015, Plaintiffs' counsel replied to Wexler's email with PAS's documents, stating that the documents were insufficient to perform an audit and attached a copy of a June

10, 2014 letter from the Plaintiffs' auditor to PAS, which listed the requested audit documents. *See Dkt. No. 40-5.*

22. On December 2 2015, the Court continued the motion for rule to show cause on December 1, 2015. *See Dkt. No. 37.*

23. On January 4, 2016, one day before the hearing date of January 5, 2015, PAS delivered approximately 250 documents to Plaintiffs' attorney's office.

24. On January 5, 2016, the Court entered and continued the motions for rule to show cause to allow Plaintiffs to review the tendered documents to ascertain if they would satisfy the October14, 2015 Court Order to enter a judgment amount. *See Dkt. No. 38.*

25. Upon review of the documents, on January 7, 2016 Plaintiffs' counsel emailed Wexler, explaining that the documents did not satisfy the accounting records requested in the October 14, 2015 order. Plaintiffs' counsel's email also explained what documents were needed and attached the June 10, 2014 letter again and a short summary the documents that were tendered by PAS. *See Dkt. No. 40-6.*

26. On January 19, 2016, Wexler replied that he would "see what other documents there are, if any." *See Dkt. No. 40-7.*

27. At the February 2, 2016 hearing, Plaintiffs' counsel appeared and Wexler appeared in court late. The Court set a hearing date for rule to show cause for February 24, 2016. *See Dkt. No. 39.*

28. On February 22, 2016, Wexler emailed Plaintiffs' counsel with additional bank statements for the Defendant corporation and stated "that there are no other documents", a statement made without any certification from PAS and without an appearance on file on behalf of the Defendant. *See Dkt. No. 45-8.*

29. On February 24, 2016, Plaintiffs' counsel, Wexler and a representative from PAS, George Ongay ("Ongay"), appeared in Court, where Plaintiffs' counsel requested Quickbooks accounting records (as identified in the bank statements tendered on February 22, 2016) and the other accounting documents as previously requested.

30. On February 24, 2016, the Court denied Plaintiffs' motion to hold Defendant in civil contempt without prejudice and ordered Galvin and/or Ongay to file an affidavit, certifying that all relevant documents requested by the Plaintiffs are complete and have been produced by March 16, 2016. *See Dkt. No. 44.*

31. On April 7, 2016, Plaintiff filed a third motion to hold Defendant in civil contempt because PAS had not tendered the documents as required in October 14, 2014 order, nor filed an affidavit certifying that all relevant documents requested by the Plaintiffs are complete and have been produced by March 16, 2016. *See Dkt. No.45.*

32. On April 20, 2016, Wexler appeared at the hearing on the third motion to hold Defendant in civil contempt with a certification by Cesar Galvan and George Ongay, both managers at PAS, LLC, which was filed with the Court on April 20, 2016. Attached hereto as **Exhibit E** is a copy of the certificate signed by Cesar Galvan and George Ongay. *See Dkt. No.48.*

33. According to the certification, Galvan and Ongay on behalf of PAS "have no assets or accounts"; "produced whatever documents were in their possession in satisfaction of the court's order"; have "tendered the documents their possession"; and have "no other documents in their possession." *See Ex. E.*

# FACTS

34. On July 21, 2016, the Funds' auditors, Bansley and Keiner, LLP, conducted an audit using the number of locations PAS claimed to operate during April 1, 2012 to August 31, 2014 (the

"Audit Period") and information provided by PAS to the Funds regarding its operations during the relevant period to reasonably estimate the amount of contributions owed to the Funds. Attached hereto as **Exhibit F** is copy of the July 21, 2016 Audit Report ("Audit Report").

35. Given that PAS failed to maintain records to complete a more specific audit, the Funds' auditors have estimated the amount of contributions owed based upon assumptions and the limited information provided to the Funds.

36. According to the Audit Report, PAS owes the Plaintiff Welfare Fund $53,025.00 plus interest and liquidated damages in this matter. *See Exhibit F*.

37. According to the Audit Report, PAS owes the Plaintiff L & E Fund $67, 266.00 plus interest and liquidated damages in this matter. *See Exhibit F*.

38. Collectively, the total owed to the Plaintiff Funds is $120,291.00 plus interest and liquidated damages.

39. The auditors determined that no contributions were owed to the Pension Fund. *See Exhibit F*.

## LEGAL ANALYSIS

40. Section 515 of ERISA, 29 U.S.C. § 1145 provides that "[e]very Employer who is obligated to make contributions to a multiemployer plan . . . under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with . . . such agreement."

41. If an employer fails to make the contributions as required by the collective bargaining agreement and Section 515, the employer is subject to the provisions of Section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2). Accordingly, if a judgment is entered in favor of the Funds, the Funds are entitled to an award which includes the unpaid contributions; interest on the

unpaid contributions; an amount equal to the greater of: interest on the unpaid contributions, or liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the Court to be due and owing in delinquent contributions; reasonable attorneys' fees and costs of the action, to be paid by the defendant, and such other legal or equitable relief as the court deems appropriate. ERISA, 29 U.S.C. §1132(g)(2)(A)-(D).

42. ERISA, 29 U.S.C. § 1059(a)(1) provides that:

    "[E]very employer shall, in accordance with such regulations as the Secretary may prescribe, maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees. The plan administrator shall make a report, in such manner and at such time as may be provided in regulations prescribed by the Secretary, to each employee who is a participant under the plan and who--

    **(A)** requests such report, in such manner and at such time as may be provided in such regulations,
    **(B)** terminates his service with the employer, or
    **(C)** has a 1-year break in service (as defined in section 203(b)(3)(A) [29 USCS § 1053(b)(3)(A)]).

    The employer shall furnish to the plan administrator the information necessary for the administrator to make the reports required by the preceding sentence." 29 USCS § 1059(a)(1).

43. If an employee benefit fund has proven that an employer is liable for delinquent contributions, and the employer has failed to keep records that would allow the fund to calculate the precise amount of contributions owed, then the burden shifts to the employer to come forward with evidence of the precise amount of covered work (work covered by the CBA) performed by its employees or to come forward with evidence to challenge the accuracy of the auditor's calculations. *Laborers' Pension Fund v. A & C Envtl., Inc., 301 F.3d 768, 782-83 (7th Cir. 2002); Chicago Dist. Council of Carpenters Pension Fund v. Reinke Insulation Co., 347 F.3d 262, 264 (7th Cir. 2003).*

44. Defendants are required to keep complete records of its employees as required under both ERISA and the Collective Bargaining Agreement entered into by these parties. Where the defendant is unable to adequately establish that the work performed was not within the geographical and jurisdictional area under the Collective Bargaining Agreement because it failed to maintain the proper records, it is the defendants' burden to establish that the audit is not a reasonable estimate of the amount of damages due and owing to the plaintiffs. An employer's failure to maintain adequate records shifts the burden to the employer to prove that the work performed was covered or not covered. *Cement Masons' Pension Trust Fund v. M&B Concrete Inc.*, 2006 U.S. Dist. LEXIS 4366 (E.D. Mich. Feb. 6, 2006). See also *Ironworkers Local 25 Pension Fund v. Rusztowicz*, 2005 U.S. Dist. LEXIS 30551 (E.D. Mich. Nov. 30, 2005).

45. Under section 1059(a)(1) of ERISA, PAS was required to maintain records with respect to each of its bargaining-unit employees and with respect to bargaining-unit work performed, in each instance sufficient to determine the benefits due or that may become due to or on behalf of such employees. *See Moriarity v. B. Michael Muzyka, Ltd*, 379 F. Supp. 2d 935 (N.D. Ill. 2005).

46. PAS failed to keep the statutorily required records.

47. Accordingly, as a matter of law, the Funds' auditors were permitted to conduct the audit based on the scant records provided by PAS, and based on those records, to make a reasonable assumption as to the amount of contributions owed to the Welfare and L&E Funds. *BE & K Constr. Co. v. Will & Grundy Counties Bldg. Trades Council*, 156 F.3d 756, 770 (7th Cir. 1998) (holding that damages "need not be proven with the certainty of calculus")

48. The manner in which the auditors conducted the audit and an explanation of their assumptions is set forth in the auditor's attached affidavit. Attached hereto as **Exhibit G** is copy of affidavit of Auditor Thomas D. Marino.

49. Given PAS's failure to maintain records, the burden to dispute the amount owed in the Audit Report shifts to PAS.

**WHEREFORE,** the Funds move the Court for an order:

A. Entering a judgment against PAS, LLC and in favor of Plaintiffs Teamsters Local Union No. 727 Health and Welfare Fund and Teamsters Local Union No. 727 Legal and Educational Assistance Fund in the amount of $120,291.00 plus interest and liquidated damages in this matter; and

B. Compelling the Defendant to file all outstanding contribution reports and to pay in full its outstanding monthly contributions to the Plaintiffs, plus interest, liquidated damages and reasonable attorneys' fees and costs; and

C. any other relief that this Court deem just and equitable.

Respectfully submitted,

WILLIG, WILLIAMS & DAVIDSON

  s/ Linda M. Martin
LINDA M. MARTIN, ESQUIRE
*Lead Counsel*
1845 Walnut Street, 24th Floor
Philadelphia, PA  19103
Office		(215) 656-3665
Facsimile	(215) 561-5135
Email		lmartin@wwdlaw.com

ILLINOIS ADVOCATES, LLC

   s/ William Tasch

WILLIAM TASCH, ESQUIRE
77 W. Washington, Suite 2120
Chicago, IL 60602
Office		(312) 346-2052
Facsimile	(312) 492-4804
W. Tasch Email   William.Tasch@iladvocates.com

ILLINOIS ADVOCATES, LLC

  s/ Cara M. Anthaney
CARA M. ANTHANEY, ESQUIRE
77 W. Washington, Suite 2120
Chicago, IL 60602
Office		(312) 346-2052
Facsimile	(312) 492-4804
Email   cara.anthaney@iladvocates.com


*Counsel to Plaintiffs Teamsters Local Union No. 727 Benefit Funds and Trustees*